STATE ex rel. DIRKS, Respondent

v.

CAPITOL SECURITY LIFE INSURANCE COMPANY, Appellant

(174 N.W.2d 212)

(File No. 10696. Opinion filed February 10, 1970)

**John E. Burke,** Sioux Falls, **Bangs, McCullen, Butler, Foye & Simmons, Geo. A. Bangs** and **W. A. McCullen,** Rapid City, for defendant and objectors, appellants.

**Woods, Fuller, Shultz & Smith, H. L. Fuller,** Sioux Falls, for plaintiff and respondent.

HANSON, Judge.

In delinquency proceedings pending in the Circuit Court of Minnehaha County under the provisions of SDCL 58-29 involving the Capitol Security Life Insurance Company a group of minority stockholders appeal from an order of liquidation.

Capitol Security Life Insurance Company of Sioux Falls was incorporated under the laws of this state in 1960 as a stock life insurance company. It was granted a license to write life and health insurance on December 29, 1961 and was authorized to transact business in South Dakota and Arizona. The amount of insurance written by the company does not appear of record.

With the consent of the Board of Directors of Capitol Security, the present proceedings were commenced in May 1968 upon petition of the Commissioner of Insurance seeking an order of rehabilitation under SDCL 58-29-15(10). An order directing the commissioner to take possession of the property and business of the company and to rehabilitate the same was entered on May 31, 1968. No insurance was written by the company

after the order of rehabilitation was entered. Upon order of the Court the Commissioner of Insurance sold and transferred all of Capitol Security's insurance contracts to The Banker's Capital Life Insurance Company and sold all of its personal property at auction. The residual assets total approximately $430,000 consisting of certificates of deposit, first real estate mortgages, and an office building in Sioux Falls. As Capitol Security had 401,219 shares of stock outstanding the Commissioner estimated the per share book value would range from $1.05 to $1.11. There is evidence of recent stock solicitations considerably below actual book value.

On January 25, 1969 the Commissioner of Insurance petitioned the Circuit Court for approval of a plan of reorganization and sale of remaining assets to Western Holding Company of Des Moines, Iowa. The proposed plan provided for an exchange of .5093 shares of Western Holding common stock for each share of Capitol Security's common stock. In the alternative the Commissioner petitioned for an order of liquidation. Prior to the hearing stockholders representing approximately 25% of Capitol Security's stock filed objections to the proposed plan of reorganization and to liquidation. Western Holding withdrew its offer and the hearing proceeded on the alternative request for an order of liquidation.

During the hearing a plan to purchase Capitol Security assets by the First South Dakota Bank Shares, Inc. was presented. This offer to purchase involved an exchange of stock after an appraisal of values. The trial court overruled the minority stockholders' objections to liquidation; refused approval of the offer of purchase made by First South Dakota Bank Shares; and ordered liquidation of Capitol Security.

The objecting minority stockholders seek reversal of the order of liquidation together with remand of the proceedings with directions (1) to terminate rehabilitation, and (2) to turn over Capitol Security's assets to the corporation for disposition. They contend (1) when a solvent insurance corporation ceases to be an "insurer" the jurisdiction of the commissioner of insur-

ance over the affairs of the corporation terminates and (2) a full hearing on the application to terminate the rehabilitation proceedings was not granted.

■ As the insurance business vitally affects the public interest the state has authority to regulate, supervise, and control insurance companies from the time of their formation to the time of their dissolution. Regulatory measures of this nature governing dissolution and liquidation constitute a comprehensive, economical, and exclusive procedure for winding up the affairs of an insurance company "to the end that the interests of all its creditors, policyholders, stockholders, and the public will be subserved." Knickerbocker Agency v. Holz, 4 N.Y.2d 245, 173 N.Y.S.2d 602, 149 N.E.2d 885; O'Malley v. Prudential Casualty & Surety Co., 230 Mo.App. 935, 80 S.W.2d 896; Booream v. Washington Casualty Insurance Co., 110 N.J.Eq. 164, 159 A. 519; Vol. 2 Couch on Insurance, 2d § 22.53.

The objecting stockholders do not question the propriety of the order of rehabilitation entered at the outset of this delinquency proceeding based upon consent of the majority of the directors of Capitol Security, SDCL 58-29-15(10). An "insurer" under this chapter is defined as "any person, firm, corporation, association or aggregation of persons doing an insurance business and subject to the insurance supervisory authority of, or to liquidation, rehabilitation, reorganization or conservation by the commissioner or the equivalent insurance supervisory official of another state; also all persons purporting to be engaged as insurers in the business of insurance in this state, and persons in process of organization to become insurers". SDCL 58-29-1(2). It is further provided that "Delinquency proceedings pursuant to this chapter shall constitute the sole and exclusive method of liquidating, rehabilitating, reorganizing or conserving an insurer". SDCL 58-29-2.

■ ■ After an order of rehabilitation has been entered the insurance commissioner is required "to take possession of the property of the insurer and to conduct the business thereof, and to take such steps toward removal of the causes which have made rehabilitation necessary, as the court may direct." SDCL

58-29-16. If rehabilitation of the company is successful, the court may terminate the proceedings and permit the insurer to resume possession of its property and the conduct of its business. SDCL 58-29-17. This contemplates rehabilitation of the company as an insurer and the burden is upon the company to show that rehabilitation is no longer necessary. Neither the Commissioner of Insurance nor the court had authority to consider or approve plans to convert Capitol Security to an ordinary business corporation by reorganization or merger.

If the Commissioner of Insurance deems further efforts to rehabilitate the insurer would be useless during the course of delinquency proceedings, he may apply to the court for an order of liquidation. SDCL 58-29-18. As summarized in Rhode Island Ins. Co. v. Downey, 95 Cal.App.2d 220, 212 P.2d 965, "It is the conservator's duty to try to remove the causes leading to the company's difficulties. If this cannot be done, he must attempt to rehabilitate its business, and if this cannot be done, liquidation will have to follow. Carpenter v. Pacific Mutual Life Ins. Co., 10 Cal.2d 307, 74 P.2d 761."

██ Capitol Security became an "insurer" upon organization as a domestic insurance company. The supervisory authority of the Commissioner of Insurance over the affairs of the company continued after its insurance business was transferred to another company in the course of rehabilitation proceedings. For jurisdictional purposes it remained an "insurer". The transfer of its business did not alter its character. In this respect it should be pointed out that an insurance company remains ineligible for reorganization under Chapter X of the Bankruptcy Act "notwithstanding it has ceased to function in respect of its primary purpose and is being liquidated through a proceeding in court, or that a receiver has been appointed, or that the superintendent of insurance has taken over the company for rehabilitation or dissolution." Vol. 11 Remington on Bankruptcy, § 4417, p. 109. One of the specific grounds for liquidating an insurance company is that the insurer "has ceased transacting business for a period of one year". SDCL 58-29-19(1) and this provision applies to a "solvent" as well as an "insolvent" insurer.

██ ██ Authority to rehabilitate Capitol Security ended upon transfer of its insurance business to Bankers Capitol Life Insurance Company. Thereafter, the Commissioner was obligated to proceed with liquidation. In the process he may pursue the most advantageous method of liquidating the remaining assets.

Affirmed.

All the Judges concur.